IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:10cr186-MHT |
| | ) | |
| RONALD E. GILLEY | ) | |

### UNITED STATES' RESPONSE TO DEFENDANT GILLEY'S MOTION TO COMPEL

The United States of America, through undersigned counsel, hereby responds to defendant Gilley's Motion to Compel.

## ARGUMENT

**I.     Non-Redacted Federal Bureau of Investigation FD-302s Relating to Jarrod D. Massey**

Defendant Gilley moves the Court to compel non-redacted copies of the Federal Bureau of Investigation ("FBI") FD-302 memoranda ("302s") relating to former defendant Massey.  Mot. at 1-4.  This request is mooted by the Court's Order dated January 11, 2011, Dkt. No. 335, which requires disclosure of the non-redacted 302s on or before January 31, 2011.  In addition, although not required to do so under the Court's Standing Order, Brady, or Giglio, the United States will produce agent notes of Massey's interviews on or before the same date.

**II.    Grand Jury Transcripts and FBI Memoranda Associated with Case Numbers 46187 and 44533**

To ensure that the defense is able to prepare for trial, the United States produced numerous 302s that reference either one or two internally assigned FBI case numbers (Case Numbers 46187 and 44533).  The United States also produced numerous grand jury transcripts, which defendant Gilley presumes relate to the investigations corresponding to the two case numbers.  Notwithstanding

the discovery principles governing this case, defendant Gilley seeks the totality of 302s and grand jury transcripts withheld by the United States that are associated with either or both case numbers, or, alternatively, a description of the substance of the withheld documents.[1]  Mot. at 5-6.  These sweeping requests should be denied.

The Court's Standing Order, Brady, and Giglio provide clear direction regarding disclosures. To the best of its ability, the United States has complied in full with these mandates.  Indeed, when weighing whether to disclose arguably discoverable material, the United States has erred on the side of disclosure.  Defendant Gilley nevertheless seeks additional discovery.  He argues that because the United States disclosed some 302s and grand jury transcripts associated with certain investigations, it has somehow waived the ability to withhold any 302s or grand jury transcripts associated with those investigations.   In effect, defendant Gilley twists the good-faith expansiveness of the government's disclosures into a baseless justification for additional discovery.  The Court should reject this distortion.  Other than pointing to the breadth of the government's production, defendant Gilley fails to so much as speculate how the Court's Standing Order or law render the undisclosed material discoverable.  Eleventh Circuit caselaw squarely rejects such open-ended disclosure.

In United States v. Jordan, 316 F.3d 1215 (11th Cir. 2003), the Eleventh Circuit held that "[w]hether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely does not demand that much."  Id. at 1254 (quoting United States v. Agurs, 427 U.S. 97, 108-09 (1976).  In Jordan, as in the present case, the government's disclosures exceeded the requirements of Federal Rule of Criminal Procedure 16.  Id. at 1253.  Moreover, just as the

---

[1] Unlike defendant McGregor, whose analogous request also covers FBI FD-1023 memoranda, McGregor Motion to Compel at 13-14, defendant Gilley's Motion addresses only grand jury transcripts and 302s.

defense here exploits the breadth of government disclosures to argue for additional discovery, the defense in Jordan likewise claimed that the government had "waived its right" to withhold anything relating to the investigation of their case.  Id.  The Eleventh Circuit firmly rejected such a "general request for favorable information" as overreaching, and ruled that "the defendants' requests went far beyond what the law, as we have expounded it, requires."  Id. at 1254 (emphasis added).  Here, defendant Gilley's requests likewise go far beyond what he is entitled to under the law, and, like the defense requests in Jordan, should be denied.

For the same reasons, the United States should not be required to summarize withheld 302s or grand jury transcripts merely because of the scope of its discovery.  It is beyond question that the Court's Standing Order and relevant caselaw require the United States to make appropriate disclosures.  Nothing, however, requires the United States to summarize and describe what is not discoverable.  Defendant Gilley suggests that the summaries will make it possible to identify material that the United States should have produced.  Mot. at 5-6.  He does not, however, offer any facts in support of this claim.  Because his wholesale speculation amounts to an unwarranted "fishing expedition," his request should be denied.  See, e.g., United States v. Arias-Izquierdo, 449 F.3d 1168, 1169 (11th Cir. 2006) (rejecting disclosure under Brady based on mere speculation).

Although not currently required to do so under the Court's Standing Order or relevant law, the United States has already disclosed a significant percentage of the material that is discoverable under the Jencks Act.  To the extent that any of the withheld material sought by defendant Gilley falls under the Jencks Act, the United States will disclose such material—which should be small in volume—two weeks before trial.  In addition, the United States is prepared to submit the withheld documents or a summary of the documents to the Court for in camera review so that the Court may

determine whether disclosure is required.

### III.    **Brady Material (Draft Plea Agreements and Exculpatory Information Allegedly Provided by Former Birmingham, Alabama Mayor Larry Langford)**

Defendant Gilley moves the Court to compel the production of (1) draft plea agreements circulated between the United States and other defendants or cooperating witnesses, and (2) exculpatory information supposedly provided by former Birmingham, Alabama, Mayor Larry Langford.  Mot. at 6.

As an initial matter, drafts, per se, do not explicitly fall under the Court's Standing Order, Brady, or Giglio.  Nevertheless, the United States is well aware of its responsibilities regarding disclosures, and has already satisfied those responsibilities to the best of its ability.  Neither the draft plea agreements at issue nor the process of negotiating the plea agreements have given rise to information requiring disclosure.  Still, the United States is prepared to submit the draft plea agreements to the Court for in camera review so that the Court may evaluate whether disclosure is required.

Second, with respect to the information sought regarding Mr. Langford, the United States has repeatedly emphasized to defendant Gilley that the government has not interviewed Mr. Langford.  It is inexplicable why defendant Gilley persists in requesting this non-existent information.

### IV.    **Electronic Communications Between Any Witness and Any Government Agent**

Defendant Gilley seeks to circumvent the clear mandate of the Court's Standing Order, which specifies that material subject to the Jencks Act is not due until the day before trial commences.  The United States' decision to aid defendant Gilley and his co-defendants by producing certain witness statements well in advance of trial in no way nullifies the Standing Order.  As such, defendant

4

Gilley's demand for all electronic communications between potential witnesses and government agents is premature.

Nevertheless, to avoid the potential for delay at trial, the United States will produce any additional material subject to Jencks Act disclosure no later than two weeks prior to the commencement of trial—and two weeks ahead of the deadline set by the Court's Discovery Order. The government is aware of its continuing <u>Brady</u> obligations.  Should the United States determine that the substance of any electronic communication involving a potential witness contains exculpatory information, such information will be provided pursuant to those obligations.

**V.      Tape Recordings Made by Houston County Sheriff Andy Hughes.**

Defendant Gilley moves the Court to compel the production of audio recordings of conversations made by Houston County, Alabama, Sheriff Andy Hughes.  Mot. at 7-8.   The recordings were referenced in 302s already disclosed to the defense.

Neither the Court's Standing Order nor relevant law require the production of attachments to and items referenced in 302s.  Defendant Gilley offers no clear reason why the recordings are material to his defense or otherwise discoverable.  He merely notes in a conclusory manner that disclosure is justified (1) by Sheriff Hughes's unexplained "relationship" with defendant Gilley and (2) by the fact that 302s referencing the recordings were previously disclosed. <u>Id</u>. at 8.  Nonetheless, since November 15, 2010, the United States has repeatedly invited defense counsel both verbally and in writing to review items attached to and referenced in 302s at the FBI's Montgomery Resident Agency.  That invitation remains open if defendant Gilley wishes to review the audio recordings.

**VI.      Consensual Recording Information**

Defendant Gilley seeks "copies of all authorizations for consensual monitoring utilized in

5

this case." The United States has provided all documentation responsive to this request.

With the exception of two consensual recordings,[2] all recordings were made using specialized, tamper-proof law enforcement equipment, which date-stamped the recordings. The original recordings, downloaded from the recording equipment using FBI software, have been sealed and stored as evidence with the FBI. For purposes of discovery, the United States exported audio files from duplicates of the original recordings and provided the audio and date for each recording to the defendants.

To the extent defendant Gilley also seeks the technical specifications of recording equipment, this information is privileged. In Van Horn, 789 F.2d at 1492, the Eleventh Circuit held that the qualified law enforcement privilege "applies . . . to the nature and location of electronic surveillance equipment." Id. at 1508. The Court continued, holding that "[d]isclosing the precise locations where surveillance devices are hidden or their precise specifications will educate criminals regarding how to protect themselves against police surveillance." Id. Van Horn applies with equal force here, where disclosure of the technical specifications of FBI recording devices would expose critical investigative techniques and risk educating criminals on how to identify and circumvent them.

Defendant Gilley cannot establish necessity sufficient to overcome the law enforcement privilege. Id. (rejecting claim of necessity based on possibility of distorted recordings where defendants were given access to the recordings and told that they were transmitted by air and not wire). Indeed, the ultimate question of who is speaking on the recordings is a question properly for the jury. Id. Defendant Gilley will be free to cross-examine any witness who seeks to authenticate

---

[2] On March 24, 2009, Benjamin Lewis recorded a telephone conversation with defendant Smith using a cassette recorder provided by the FBI. On February 16, 2010, Scott Beason recorded an unannounced visit from Massey on a portable MP3 recorder.

the recordings and identify his voice or anyone else's.  Because defendant Gilley has failed to challenge the validity of any specific consensual recording, such that the recording equipment itself is at issue, the Court should reject his demand for information regarding the nature and specifications of FBI recording devices.

Moreover, any internal chain-of-custody forms prepared by the FBI in connection with the original recordings are irrelevant to the questions of whose voice is on the recording and whether the recordings were altered.  These forms are not 302 interview reports, and they were not signed by the cooperating sources.  Neither the cooperating source nor any law enforcement agent could alter the recordings made with the specialized FBI equipment and software.  And in any event, as defendant Gilley knows, chain-of-custody issues go to the weight—and not the admissibility—of the evidence at trial.  United States v. Roberson, 897 F.2d 1092, 1096 (11th Cir. 1990); see also United States v. Ransom, 515 F.2d 885, 890 (5th Cir. 1975) (holding that proof of chain of custody for consensual recordings was not required at a suppression hearing, where transcript was verbatim and government established consent).

## VII.   Title III Wiretap Information

The United States has provided defendant Gilley and his co-defendants with significant information and data concerning the interceptions gathered during the wiretap phase of the investigation.  Defendant Gilley, however, takes the position that he is entitled to additional data—organized in a manner of his choosing—merely because the VoiceBox system is capable of generating it.  Defendant Gilley cannot dictate the manner of production, and his demands have no basis in the law.

Defendant Gilley notes that the government has provided "one particular report" pertaining

to calls classified as "privileged." Mot. at 9.  What he omits, however, is that this report—describing the complete session history for such interceptions— actually provides:

> (1) the agent(s) who listened to the call, (2) how the call was initially designated (e.g., pertinent, privileged[,] or non-pertinent), (3) if the designation was changed, (4) whether the call was minimized and for how long it was minimized[,] (5) how many times the call was accessed, (6) who accessed the call, (7) whether the call was recorded onto a CD or other portable device, (8) whether the call was transcribed, [and] (9) how a privileged call was handled both at the time of the call and before and after it was marked privileged.

Id.  In other words, with respect to calls classified as "privileged," defendant Gilley has more than sufficient evidence to challenge the interception and handling of such calls.

### A.      Additional Session History Reports

Defendant Gilley seeks the same session history reports for calls classified as "pertinent" and "non-pertinent."  Id.  The United States previously provided to each defendant the audio content for audio calls to which he or she was a party and which the government had classified as "non-pertinent" in the VoiceBox system.  The United States does not oppose defendant Gilley's request for "non-pertinent" session histories.  Moreover, because the data contained in the requested session history reports does not reference the content of the interceptions marked "non-pertinent," the government will provide to each defendant a full set of the session histories for interceptions classified in the VoiceBox system as "non-pertinent."  The government anticipates providing the reports by January 21, 2011.

In contrast, the Court should deny defendant Gilley's demand for the complete session histories of all calls classified as "pertinent."  Without challenging a single call, defendant Gilley seeks to justify such disclosure based on his claim that records reflecting the handling of these calls are relevant to a potential challenge to the wiretap evidence.  However, defendant Gilley already has

sufficient information—i.e., the source audio—from which to make his claimed argument. In other words, if defendant Gilley wishes to attack a particular call as mis-classified, he may do so based on the audio previously provided. Additional information regarding the access history does not affect whether the <u>content</u> of the call should have been classified one way or another.

Disclosure of the session history reports for "pertinent" interceptions would also risk exposing the focus and direction of the government's ongoing investigation, as defendant Gilley (and his co-defendants) would be able to discern, from the volume and dates of access to particular interceptions, what conduct and which individuals the government may be investigating currently. Defendant Gilley has provided an insufficient basis to justify the relief he seeks and the danger such relief poses to the government's legitimate, nonpublic investigative prerogatives, as they pertain to pertinent audio content.

**B.     Synopses**

Defendant Gilley also seeks user-created synopses, i.e., summaries, of interceptions. <u>Id.</u> With respect to calls classified as "pertinent," he has failed to articulate why he needs summaries of the source audio he already possesses. Moreover, defendant Gilley already possesses the synopses contained in the detailed linesheets submitted to Judge Hobbs for his phone line.

Similarly, with respect to interceptions classified as "privileged" and "non-pertinent," because defendant Gilley already has (or will have) the actual audio and session history reports detailing if and when a synopsis was edited or created, he has more than sufficient information to make an argument to challenge the government's handling of the interceptions. He fails to explain how he cannot make his purported argument with what the United States has already provided (or will provide in the case of "non-pertinent" session histories).

9

In addition, and more importantly, the synopses of interceptions classified as "privileged" in the VoiceBox system reference communications that defendant Gilley previously has claimed are protected by certain evidentiary privileges.  The United States has taken significant protective measures—both before and after indictment—to minimize exposure by government personnel to potentially privileged as well as non-pertinent content, and production of synopses for interceptions currently marked as such would risk further exposure.  The Court therefore should reject defendant Gilley's request for production of synopses for interceptions classified as "privileged" and "non-pertinent"—especially in light of the fact that defendant Gilley actually possesses the source audio.

### C.   Other Demands

Defendant Gilley also seeks the identification of call monitors.  Mot. at 10.  The United States previously informed all defendants that each monitoring agent was assigned a VoiceBox ID in the first-initial-last-name format.  For example, a monitoring agent named John Doe would be assigned the ID "jdoe."  Similarly, the government has already provided discovery regarding the minimization procedures utilized during the wiretap phase of the investigation.

Finally, although defendant Gilley has demanded certain additional VoiceBox reports—i.e., line-sheet minimization reports, electronic surveillance logs, document summary reports, case statistical breakdown, statistical summary reports, and user line assignments/reports—he has provided no specific justification for why he is entitled to them.  In light of the significant amount of audio content and interception-related data he already possesses, defendant Gilley's unsupported entreaties amount to little more than a fishing expedition.  Unless and until defendant Gilley can articulate his need for specific information, the Court should deny his additional requests.

Respectfully submitted,

LANNY A. BREUER
Assistant Attorney General, Criminal
Division
Attorney for the United States
Acting Under Authority of 28 U.S.C. § 515

JACK SMITH, Chief
Public Integrity Section


By:      /s/  Barak Cohen
Barak Cohen
Trial Attorney
Public Integrity Section
U.S. Department of Justice
1400 New York Ave., NW, Suite 12100
Washington, DC 20005
(202) 514-1412

11

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served on counsel of record

through the Court's electronic filing system this <u>14th</u> day of <u>January</u>, 2011.


   <u>/s/  Barak Cohen              </u>
Barak Cohen
Trial Attorney
Public Integrity Section
U.S. Department of Justice
1400 New York Ave., NW, Suite 12100
Washington, DC 20005
(202) 514-1412

-