IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

UNITED STATES OF AMERICA      )
                              ) CRIMINAL ACTION NO.
        v.                    )    2:10cr186-MHT
                              )        (WO)
RONALD E. GILLEY              )

### OPINION

Defendant Ronald E. Gilley has been charged, along with ten other defendants, in a 39-count indictment, which includes charges of federal-programs bribery, honest-services fraud, money laundering, and conspiracy to commit federal-programs bribery.

This matter is now before the court on Gilley's motion to revoke or amend a magistrate judge's order revoking his pretrial release, which motion the court has treated as an appeal from that order. For the reasons given below, Gilley's motion will be granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

The relevant events giving rise to today's opinion are as follows:

<u>October 1, 2010</u>: Gilley and his co-defendants were charged in a 39-count indictment, with Gilley charged in 22 of the counts. Count one charges him with conspiracy to commit federal-programs bribery, in violation of 18 U.S.C. §§ 371, 666(a)(1)(B) & (a)(2). Counts two, four, five, eight, ten, and thirteen charge him with federal-programs bribery, in violation of 18 U.S.C. § 666(a)(2). Counts twenty-three through thirty-three charge him with honest-services fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1346. Counts thirty-four through thirty-seven charge him with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

<u>October 4</u>: Gilley had his initial appearance before a magistrate judge, and his bond was set. Two provisions of that bond are at issue. The first, the "no additional criminal conduct" condition, directed that Gilley "must

2

not violate any federal, state or local law while on release."   Order Setting Cond. of Release ¶ 1 (Doc. No. 35).   The second, the "no contact" provision, required that Gilley "avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or prosecution." Id. ¶ 8(j).

October 15: Gilley appeared in court for his arraignment and entered a plea of not guilty.

October 21: The magistrate judge modified the no-contact condition for one of the defendants, Quinton T. Ross, Jr., as follows:

> "[T]he Court excludes from the definition of contacts in Condition (j), any contacts between Defendant Ross and any witness where counsel for Defendant Ross is present and the meeting pertains to case preparation.  For purposes of Condition (j), a witness is anyone whom counsel for Defendant Ross may choose to interview in case preparation whether or not such person testifies in a subsequent hearing or trial and any other person whom the United States identifies to Defendant Ross through Counsel that it may call as a witness,

3

whether or not such person testifies in
a subsequent hearing or trial."

Order Modifying Cond. of Release at 2 (Doc. No. 137).

The magistrate judge then added that, "The Pretrial

Services Officer may modify the release conditions

imposed upon any other defendants ... consistent with

this Order upon oral or written request by counsel for

the defendants." <u>Id</u>. There is nothing in the record to

indicate whether the pretrial services officer extended

the modification to Gilley.

<u>December 14</u>: Gilley and his co-defendants appeared in

court at a motions hearing.

<u>January 6, 2011</u>: The government made a motion to

revoke Gilley's pretrial release, pursuant to 18 U.S.C.

§ 3145(a)(1), alleging that he had violated both the

no-additional-criminal-conduct and no-contact conditions

of his release.   First, the government claimed that

Gilley violated federal law while on release by

attempting to obstruct justice, in violation of 18 U.S.C.

§ 1512(b)(1) and (b)(2)(A).   Specifically, the government

4

claimed that Gilley attempted to offer money to Jarrod Massey, a co-defendant at the time and now a witness for the government, in order to prevent him from testifying truthfully at trial.  Second, the government claimed that Gilley's contact with Massey violated the no-contact condition.

     <u>February 7</u>: The magistrate judge held a hearing on the government's motion.  The evidence presented was as follows: For about three years prior to his indictment, Massey worked as a lobbyist for Gilley.  In February 2010, as part of that work, Massey offered Senator Scott Beason a bribe to vote for passage of a bill that would legalize electronic bingo in Alabama.  On April 2, 2010, Massey and Gilley agreed that, if it turned out Senator Beason was working with law enforcement, their story would be that the senator had tried to solicit a bribe from Massey, and that, when Massey relayed that offer to Gilley, Gilley refused.  In return for sticking to the story, Gilley offered Massey an equity interest in

Country Crossing and a Mississippi venture, and said he would take care of Massey's family.  He also told Massey to offer his employee, Jennifer Pouncey, a similar interest for her cooperation.  At a later date, after the April 2 conversation, Gilley "communicated [to Massey] that [the equity interest] would be worth at least a million dollars a year."  Trans. 35:17-18 (Doc. No. 596). According to Massey, he was "being supervised to basically toe the line" and that the financial offer "was to serve as an incentive to hold the line with the story that ... Gilley and [he] had discussed prior as to [their] joint story as it would relate to Senator Scott Beason."  Trans. 14:10-16.

After the indictment was handed down, Gilley tried to call Massey multiple times, but Massey would not take the calls due to the no-contact bond condition.  At the October 15 arraignment, Gilley told Massey that, "The eagle is about to land, about to knock something down, hang tight."  Trans. 23:22-23.  Massey explained: I

"understood that to mean that I knew he was working on investor details from previous conversations, and I understood that meant that either Country Crossing and/or Mississippi Development was about to get an infusion of cash, which was in some way related to me." Id. 23:25-24:4.  Furthermore, Massey took this to mean that the money Gilley referenced was not to pay Massey for any outstanding lobbying bills, but to pay him for 'toeing the line' on the Senator Beason story.

Then, on December 14, 2010, at a court appearance, Gilley approached Massey and said: "[T]hings were 'looking good for Mississippi.  Hang in there.'  You know, 'I've got something that I think is going to come next week.'" Trans. 27:23-283.  Massey's recollection was that Gilley said he expected to have "a million" coming in.  Id. 28:6.  In an email to his attorneys in which Massey memorialized his conversation with Gilley, Massey wrote that Gilley said: "I am about to get forebearance documents signed and I will get $ 1.5 million.  Hang in

there everything is going to be ok." Def.'s Ex. 2 § UU. Gilley followed this conversation up with a phone call to Massey later that day, where he reiterated that things looked good in Mississippi.  Massey sent an email to his attorneys memorializing the phone call, as well.  He wrote that Gilley "said he would be getting $ 1.5 million pronto" and "everything we talked about previously (taking care of me) was going to happen." Def.'s Ex. 2 § VV.  Massey also reported that Gilley "said the Mississippi deal was very close and that he would tell me all the details in person next time we talked (in person)." Id.  Massey again took these statements to mean that Gilley was "basically verifying or reconfirming the previous commitment he made to me on the equity piece." Trans. 30:4-5 (Doc. No. 596).

At the close of the hearing, the magistrate judge issued an oral order granting the government's motion to revoke Gilley's bond and remanding him to the custody of the U.S. Marshal.

**February 14**: The magistrate judge issued a written order of detention, stating his reasons for revoking Gilley's bond.   The magistrate judge found that Gilley had violated his terms of release because there was probable cause to believe he had committed another federal crime while on bond and there was clear and convincing evidence that he had violated the no-contact condition of release.   Though the magistrate judge did not specify what law he believed Gilley had violated, it is clear he was referring to the obstruction-of-justice statute, 18 U.S.C. § 1512(b)(1) and (b)(2)(A), on which the United States had based its motion for revocation of pretrial release.   The magistrate judge also found that there was no condition or combination of conditions of release that would assure that Gilley did not pose a danger to the safety of any other person or the community.   The magistrate judge therefore ordered that Gilley's pretrial release be revoked and that he be detained pending trial.

<u>February 18</u>: Gilley filed a motion to revoke or amend the magistrate judge's detention order, which this court has treated as an appeal of that order.

<u>March 7</u>: This court held a non-evidentiary oral argument on Gilley's appeal.  At the hearing, the government agreed to drop any contention that Gilley's pretrial release should be revoked based on the no-contact condition and to rely instead solely on whether there was probable cause to believe Gilley had committed another crime while on pretrial release.

## II.  THE LAW

The Bail Reform Act, 18 U.S.C. § 3141 <u>et seq.</u>, sets out when a defendant's pretrial release may be revoked. The statute provides for different burdens of proof depending upon the nature of the alleged violation. Revocation is appropriate when the presiding judge finds there is "probable cause to believe that the person has committed a Federal, State, or local crime while on

10

release," 18 U.S.C. § 3148(b)(1)(A), or "clear and convincing evidence that the person has violated any other condition of release." 18 U.S.C. § 3148(b)(1)(B). In addition, the judge must find that "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community," U.S.C. § 3148(b)(2)(A), or the person is unlikely to obey any conditions set. 18 U.S.C. § 3148(b)(2)(B). If there is probable cause to believe that the defendant committed another federal, state or local felony while on release, a rebuttable presumption arises that there is no condition or combination of conditions of release that will assure the safety of the community. 18 U.S.C. § 3148(b). "The term 'dangerousness,' as used in the Bail Reform Act of 1984, has a much broader construction than might be commonly understood in everyday parlance," and "extend[s] to non-physical harms." <u>United States v. King</u>, 849 F.2d

485, 487 n.2 (11th Cir. 1988).  Thus, if the presiding judge finds that the defendant's actions on release indicate that he "might engage in criminal activity to the detriment of the community," such as corruption or other non-physical harms, id., he may appropriately be detained.

The Bail Reform Act provides for district court review of a magistrate judge's detention order.  18 U.S.C. § 3145(b).  This review is de novo, in that the district judge conducts an independent review of the facts.  King, 849 F.2d at 490.  The district judge may conduct an evidentiary hearing if he "determines that additional evidence is necessary or that factual issues remain unresolved" after reviewing the defendant's motion, or he may rely on the pleadings and evidence considered by the magistrate judge to "determine that the magistrate's factual findings are supported and that the magistrate's legal conclusions are correct."  Id.  If the district judge conducts an evidentiary hearing, he "must

enter written factual findings and written reasons supporting [his] decision," whether or not the court ends up adopting the magistrate judge's pretrial-detention order. Id. at 490-491. Similarly, written findings are required when the district judge adopts the magistrate judge's recommendation "but finds that certain of the magistrate's underlying conclusions or factual findings are incorrect or unsupported by the evidence." Id. at 491. However, if the district judge determines that the magistrate judge's factual findings are supported and that his legal conclusions are correct, the district judge may "explicitly adopt the magistrate's pretrial detention order" without writing his own findings of fact and statement of reasons supporting detention. Id. at 490.

### III.  DISCUSSION

### A.

The government wisely dropped its reliance on the no-contact release condition because there was no credible evidence that Gilley knew, or should have known, that Massey was a cooperating-government witness when they talked on December 14.  Moreover, the record was confusing as to whether the October 4 original version or the October 21 modified version of the no-contact condition applied to Gilley.  Gilley's motion to revoke and amend the magistrate judge's detention order will be granted to the extent that the order relied on the no-contact condition.  The government's revocation motion will be denied as to the no-contact condition, as well. (The court has, in the meantime, directed the government attorneys and defense counsel to meet with the magistrate judge to attempt to clarify this ambiguity in the wording and application of the no-contact condition as it applies to all defendants in this case.)

14

As to the no-additional-criminal-conduct condition, Gilley correctly states that "the central question in contention ... [is] not whether the contacts occurred or even what was said, but what ... Gilley meant by what was said." Mot. at 9 (Doc. No. 639). The government maintains that Gilley meant to obstruct justice, in violation of 18 U.S.C. § 1512(b)(1) and (b)(2)(A), by attempting to bribe Massey to lie. The government argues that the evidence reflects probable cause that Gilley "violated his terms and conditions of release when he offered co-defendant Massey money and things of value in exchange for Massey providing false information to the government regarding the conspiracy in which the defendants were charged." Govt. Resp. at 4 (Doc. No. 672). The government maintains that Gilley's reference to the Mississippi venture and to the million-dollar promise on December 14 was simply a coded reminder of the deal-to-lie Gilley had made with Massey earlier in the

15

year using the same terminology: investment in a Mississippi venture and a promise of a million dollars.

Gilley responds that the evidence relates merely to a legitimate debt-owed. He argues that he was attempting to provide "positive updates about the Mississippi project and other projects [as] a necessary precondition to Mr. Gilley being able to pay Mr. Massey on the legitimate invoices for services rendered that Mr. Massey had been inquiring about regularly throughout the summer and fall." Mot. at 9 (Doc. No. 639). Gilley argued that his conversations with Massey in October and December were in reference to the approximately $ 90,000 he still owed Massey for lobbying work; that, from April until November of 2010, Massey tried to collect the money owed him; and that he usually contacted one of Gilley's employees by email, and cc'd Gilley, though at least once he did email Gilley directly "following up on outstanding invoices and [how his] business had been devastated by the arrests." Trans. 34:5-6 (Doc. No. 596). Gilley

therefore argued that his conversations with Massey on October 15 and December 14, 2010, as well as the phone calls, were an effort to reassure Massey that he would be able to settle the bills that Massey so desperately wanted paid.

After an independent and de novo review of the record, the court finds there is probable cause to support the government's version of Gilley's interactions with Massey. "[P]robable cause under section 3148(b)(1)(A) requires only that the facts available to the judicial officer warrant a [person] of reasonable caution in the belief that the defendant has committed a crime while on bail." United States v. Gotti, 794 F.2d 773, 777 (2d Cir. 1986) (internal quotation marks omitted). "[I]t does not demand any showing that such a belief be correct or more likely true than false." Texas v. Brown, 460 U.S. 730, 742 (1983). This court, therefore, cannot, and does not, say that the government's allegations against Gilley are true or

correct.  Instead, as said, the issue is whether there is probable cause, and probable cause there is.  A reasonable person could find the government's reading (that Gilley was attempting to influence Massey) is probable, especially when read against the backdrop of the other evidence presented to support the allegation of a deal-to-lie between Gilley and Massey.  Gilley's references to the Mississippi venture and to the million-dollar promise on December 14 could be viewed as simply a coded reminder of the alleged deal-to-lie Gilley had made with Massey earlier in the year using the same references.

Admittedly, Gilley's reading of the evidence against him as merely an effort to update Massey about a debt owed is also plausible.  But that is not the issue.  The issue is whether the government's version is probable, and the fact that Gilley's version is plausible does not mean that the government's version is not probable.  Both versions may be plausible, and both may be even probable

based on the reasonable-person standard.  One reasonable person could draw the conclusion that one version is probable, and another reasonable person could draw the conclusion that the other is probable.  Moreover, the two versions are not necessarily mutually exclusive.  That there is probable cause that, with his conversations, Gilley sought to influence Massey to abide by a lie does not necessarily preclude that, with these conversations, he was also attempting to settle a debt owed.  The two motives may co-exist at the same time.  Indeed, that is why we have juries to decide cases when both sides present what reasonable people could differ about as to probability or plausibility.  In short, the court believes that the government has presented enough evidence for resolution of this issue by a jury.

The court has carefully considered Gilley's argument that the magistrate judge improperly relied on Massey's view (recited in the background section of this opinion) of what Gilley's intent was in making the statements at

issue.  In reaching its decision as to the existence of probable cause, this court has not done this.  Instead, the court bases its decision on its own independent and <u>de novo</u> evaluation of the record and, in particular, Gilley's statements as set against the backdrop of all the evidence.

The court must finally add that it was troubled by the government attorney's citation at oral argument to the wrong statutory provision in support of her contention that Gilley had committed another crime while on pretrial release.  The court was also troubled by counsel's poor familiarity with the evidence in the record.  However, to assure a fair trial for all involved, the court has an independent obligation to review the evidence and research the law, which have been done here.  (Nevertheless, the court hopes, and expects, that government counsel will not only be better prepared, but fully prepared, for all future proceedings.)

20

B.

Having found that the government has presented probable cause that Gilley committed the crime of obstruction of justice while on release, the court turns next to the question whether he should be released nonetheless.  In determining whether there are conditions of release that will assure a defendant's appearance and community safety, 18 U.S.C. § 3148 references the factors to be considered found in 18 U.S.C. § 3142.  These include "the nature and circumstances of the offense charged," "the weight of the evidence against the person," the person's history and characteristics, including "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," whether the defendant was on probation or parole at the time of arrest, and "the nature and

21

seriousness of the danger to any person or the community
that would be posed" by release. § 3142(g)(1)-(4).  The
statute also provides conditions that a judicial officer
may impose to assure a defendant's appearance and the
safety of the community. § 3142(b)-(c).  These include
requirements such as maintaining employment, submitting
to restrictions on travel and place of abode, complying
with a curfew, posting bond, and that the defendant
"satisfy any other condition that is reasonably necessary
to assure the appearance of the person as required and to
assure the safety of any other person and the community,"
among others.  § 3142(c)(xiv).  In reaching its decision
about Gilley, the court has considered all of these
factors where relevant to him.

However, as stated, if there is probable cause to
believe that the defendant committed a felony while on
pretrial release, a rebuttable presumption arises that
there is no condition or combination of conditions of
release that will assure the safety of the community.  18

22

U.S.C. § 3148(b).  Therefore, the above factors must be considered in the face of this presumption.

With this presumption, Congress has made clear that when there is not only probable cause for the underlying crime (through, for example, a grand-jury indictment) but also probable cause for an additional crime (in short, double probable cause), courts should be extremely circumspect before returning a defendant to his freedom pending trial.  Also, the court cannot overlook that the crime for which the government has presented probable cause (obstruction of justice) is one that goes to the very heart of this litigation: alleged witness tampering. At issue for the court is the very "integrity of its own processes and the fair administration of justice." United States v. Graewe, 689 F.2d 54, 57 (6th Cir. 1982). Moreover, there is not only the singular concern of keeping a defendant from engaging in illegal conduct, but also the public concern of "encouraging [all] witnesses and [all] potential witnesses to come forward and provide

23

information helpful to the implementation of justice,"
id., and, by that, the court means encouraging witnesses
to come forward for both the government and the
defendants.   Under these circumstances, detention of
Gilley pending trial is appropriate.

The court appreciates Gilley's contention that his
detention has impaired his and his counsel's ability to
prepare for trial.   However, the government, at the
behest of the court, has already worked with jail
officials to make substantial changes in the
circumstances of Gilley's detention to accommodate his
trial-preparation needs.   As the government has
explained:

> "The defendant is alone in a four man
> unit with a private cell. He can keep
> any documents, a CD player and audio
> tapes with him in the cell 24 hours a
> day or the jail personnel will safe-keep
> the materials for him.  The defendant
> has a telephone in the cell with
> unlimited access. The defendant can meet
> with his attorneys any day of the week,
> and they can stay throughout visiting
> hours. ... [W]hile meeting with his
> attorneys, if the defendant misses a

24

> meal, the jail will save the meal for
> him after the meeting.   The defendant
> and his attorneys determine when the
> meeting should end."

Govt. Sur-reply at 7 (Doc. No. 707).   The court has also

made clear to Gilley that any additional request for

reasonable accommodations should be brought to the

court's attention.   Gilley's need to prepare his defense

does not warrant his release.


## C.

This conclusion that the government has met its

probable-cause burden, nevertheless, leads to a serious

concern the court raised at the oral argument on March 7:

that there is no indication in the record that this

additional charge against Gilley is moving toward

resolution within a reasonable time, that is, with

presentation to a grand jury and, if an indictment, then

toward resolution before a jury of Gilley's twelve peers.

Indeed, the court thought, and hoped, that by now a grand

jury indictment or no-bill would have rendered the issue

before the court (whether there is probable cause that
Gilley committed the offense of obstruction of justice)
moot.

With regard to revocations based on findings of a
violation other than a violation of other laws (that is,
an alleged non-criminal violation), the burden of proof
is "clear and convincing" evidence.   In detaining a
person in such instances, the court can rest comfortably
with the knowledge that the evidence supports the
conclusion that the defendant  committed the violation.
In  short,  evidence  has  shown,  and  the  court  has
essentially found, that the defendant is guilty of the
violation.   While this burden is less than beyond a
reasonable doubt, it is more than a preponderance, and
thus is still quite demanding.

In contrast, with regard to the proof necessary for
violation by commission of another crime (that is, an
alleged criminal violation), the burden is only probable
cause.  The court can believe that the government has not

proved its case by a preponderance of the evidence, let alone clear and convincing evidence, and yet the defendant is still subject to being detained.  Indeed, Gilley is, and will continue to be, detained, even though no court, including this one, has found that it is even likely that he committed another crime.  And Gilley will continue to be detained throughout trial, which begins June 6 and will likely not end until sometime in late July.  (If there is an interim appeal before trial, warranting a delay in the trial, Gilley could be detained many more months or even for a year or two before trial.)

One could argue that Congress provided for this lighter burden of proof, even though the violation and penalty (presumption of detention) are so much more serious, because, unlike the alleged non-criminal violation which is resolved conclusively and quickly at the time the violation is charged, the alleged criminal violation would be just the beginning of a good-faith timely resolution in the criminal justice process.

27

In fairness to the government, the court did not raise this issue until oral argument on March 7, and neither the government nor Gilley has been given the opportunity to research the concern.  Indeed, the court itself has not researched the concern.  Nevertheless, should it continue to appear that the obstruction-of-justice charge against Gilley is not moving toward resolution, the court believes the parties should look into this matter, not only from the perspective of whether the Bail Reform Act allows his indefinite detention without any good-faith effort at final resolution of the obstruction-of-justice charge, and not only from the perspective of whether the Constitution allows this result as well, but also from the human perspective of whether it is simply the fair thing to allow to happen, thereby pretermitting any need to reach the statutory and constitutional questions.  Therefore, while the court is granting the government's motion for Gilley's detention pending trial, it is doing so with

leave to Gilley to ask for reconsideration should it appear that the obstruction-of-justice charge against him is not moving toward resolution with reasonable speed.

***

In conclusion, with regard to Gilley's appeal, the court will deny relief on the government's contention that Gilley violated the no-contact release condition. The court, however, holds that there is probable cause to believe that Gilley violated the no-additional-criminal-conduct release condition, and, for this reason, Gilley will be detained, albeit with leave to Gilley to ask for reconsideration later if the circumstances so warrant. The court emphasizes that it has not found, and does not find, that Gilley actually engaged in any additional criminal conduct, in particular, obstruction of justice. Whether Gilley has, in fact, committed the offense of obstruction of justice is a matter for resolution in another proceeding, not this one at this time.

29

Accordingly, the court will enter an appropriate judgment as follows: (1) granting Gilley's motion to revoke or amend as to the magistrate judge's holding that he violated the "no contact" condition of his pretrial release; (2) denying Gilley's motion as to the magistrate judge's holding that he violated the "no additional criminal conduct" condition of his pretrial release; (3) denying the government's motion to revoke as to the "no contact" condition of Gilley's pretrial release; (4) granting the government's motion as to the "no additional criminal conduct" condition of Gilley's pretrial release; and (5) holding that the revocation of Gilley's pretrial release should continue pending trial, albeit with leave to file a motion for reconsideration as set forth in this opinion.

DONE, this the 10th day of March, 2011.

        /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE