IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA        ) | |
| ) | |
| v.        ) | CR. NO. 2:10cr186-MHT |
| ) | |
| MILTON E. McGREGOR        ) | |
| RONALD E. GILLEY        ) | |
| THOMAS E. COKER        ) | |
| ROBERT B. GEDDIE, JR.        ) | |
| LARRY P. MEANS        ) | |
| JAMES E. PREUITT        ) | |
| QUINTON T. ROSS, JR.        ) | |
| HARRI ANNE H. SMITH        ) | |
| JARRELL W. WALKER, JR.        ) | |
| JOSEPH R. CROSBY        ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

Defendants have filed Motions to Dismiss the counts in the indictment based either directly or through an allegation of conspiracy, under 18 U.S.C. § 666(a)(2). Motions to Dismiss (Docs. #206, 408, 437, 441, 443, 450, 456, 463, 474, 486, and 490). The court received briefing from the parties and for the reasons that follow, the undersigned RECOMMENDS that the Motions be DENIED.

**I.        DISCUSSION**

Defendants raise one issue with several sub-points in challenging these charges - that § 666 does not apply to "alleged attempts to influence State Legislators and legislative staff, in matters that are purely a matter of the State's sovereign role as regulator (i.e., drafting and voting on legislation, indeed legislation that would amend the State Constitution)."

McGregor Brief (Doc. #207) at 4.  To summarize the briefing, Defendants argue that their claim is supported by: (1) the plain language of the statute; (2) the history leading to the enactment of the statute; (3) a comparison of the text of 18 U.S.C. § 201 to the text of § 666; and (4) applicable rules of interpretation, and Constitutional requirements and concerns.  The crux of Defendants' arguments center around the interpretation of terms within the statute and whether those terms can be applied to the actors in the present case.  "The crucial questions of statutory interpretation, for purposes of this motion, are (a) whether State Legislators and legislative staff are "agents' of the State of Alabama, in regard to the matters at issue in this case, within the meaning of this statute; and (b) whether the allegations of the indictment come within the statute's coverage in terms of 'any business, transaction, or series of transactions of such . . . government . . . involving anything of value of $5,000 or more.'"  McGregor's Brief (Doc. #207) at 3.

Defendants expend a great deal of effort urging the court to adopt their interpretation of the statute and its applicability to this case because, at the time of the filing of the motions, some of these issues had not been specifically addressed in this Circuit.  However, the Court of Appeals recently issued a decision in *United States v. Townsend*, 630 F.3d 1003 (11th Cir. 2011), that addresses most of the statutory interpretation claims raised by Defendants.  Defendants acknowledge *Townsend*, as stated by Defendants McGregor and Coker in their "Third Motion to Dismiss." (Docs. #450 & 486).  However, they argue that *Townsend* is not dispositive of their motions because the Court did not directly address the meaning of the

2

word "agent" in the statute, did not address sovereignty concerns in a case about legislative activity, and did not address the legislative history of the statute. The court disagrees and will address the issues raised by Defendants below.

### A.     *"Business" and "Transaction"*

Section 666 provides, in pertinent part as follows:

(a) Whoever, if the circumstance described in subsection (b) of this section exists–

> (2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666. Defendants argue that the terms "business" and "transaction" call to mind "an exchange involving the purchase or provision of goods and services," and so should be ascribed the "ordinary meaning of those words." McGregor's Brief (Doc. #207) at 5. Defendants assert that "[v]oting on legislation to amend the State Constitution, and drafting such legislation, simply do not constitute a 'transaction' or 'business' of the State of Alabama in the normal sense of the word." *Id*. at 7.

In *Townsend,* a probation officer was convicted under § 666 for receiving $5,000 in cash and $280 earrings from a releasee under her supervision in exchange for modifying the terms of the releasee's supervision. *Townsend*, 630 F.3d at 1006-07. "Thus, in *Townsend,*

3

the probation officer did not divert any federal funds and the *release cannot be said to be doing traditional 'business' with the government*. Nonetheless, the Eleventh Circuit held that 18 U.S.C. § 666 covered the behavior of the probation officer." *United States v. Ostolaza*, 2011 WL 796736 at *2 (N.D. Fla March 1, 2011) (emphasis added). Several other cases in other Circuits affirm the non-commercial reading of the terms "business" and "transaction." "In *United States v. Marmolejo*, 89 F.3d 1186 (5th Cir. 1996) [in exchange for bribes] a sheriff and deputy sheriff permitted a federal prisoner in their custody to have unauthorized conjugal visits with his wife and similarly 'romantic' visits with his girlfriend." *Id*. In as much as improperly modifying pretrial release supervision and conjugal visits can be considered "business" or "transactions" under the statute, so too can the drafting of and voting on legislation.

The court is not bothered by the failure of *Townsend*'s failure to specifically address campaign contributions. The Court stated that "[t]he plain language of 18 U.S.C. § 666(a)(1)(B) requires only that the "business, transaction, or series of transactions" involve "any thing of value" worth $5,000 or more. *Townsend*, 630 F.3d at 1010. The "business" or "transaction" alleged here might not be a commercial transaction, but then neither was the conduct in *Townsend*, or the several other Circuit cases discussed *infra* regarding the use of this statute to prosecute bribes for "intangibles." Defendant Crosby urges to the court to view much of the decision in *Townsend* as *dicta*. Crosby Motion (Doc. #465) at 15. To the extent there is *dicta*, this Court finds it instructive. However, as discussed below and as cited

4

in *Townsend*, the body of § 666 cases spread across the Courts of Appeals do not support the Defendants requests for a strict commercial only interpretation of the terms "business" or "transaction."

   **B.**     ***"Agent"***

Here, Defendants argue that the term "agent" in this statute cannot apply to a state legislator because "the word 'agent' in a way parallels its focus on 'business' and 'transaction' . . .[where] an agent is one who acts on behalf of the entity receiving funds, with regard to 'business' or 'transaction." McGregor Brief (Doc. #207) at 7.  Thus, Defendants hang their "agent" argument to the "traditional business" argument above.

Section 666 provides that an "agent" is "a person authorized to act on behalf of another person or a government."  18 U.S.C. § 666.  In *Townsend*, the "agent" was a probation officer and her activities were not tied to the type of commercial transaction which Defendants urge this court to require.  That a commercial component of the agency is not required is also reflected in the cases and their summaries as cited in *Townsend*:

> "*See United States v. Hines*, 541 F.3d 833, 836-37 (8th Cir. 2008) (deputy sheriff's prompt assistance in offering his services for evictions was a thing of value); *United States v. Zimmermann*, 509 F.3d 920, 926-27 (8th Cir. 2007) (city councilman's favorable recommendation to zoning committee was a thing of value); *United States v. Fernandes*, 272 F.3d 938, 944 (7th Cir. 2001) (prosecutor's expungement of convictions constituted a thing of value); *United States v. Zwick*, 199 F.3d 672, 690 (3d Cir. 1999) (township commissioner's vote to approve permits was a thing of value), abrogated on other grounds by *Sabri*, 541 U.S. at 604-08, 124 S.Ct. at 1945-48; *United States v. Marmolejo*, 89 F.3d 1185, 1191-93 (5th Cir. 1996)"

*Townsend*, 630 F.3d at 1010.  Again, the *Townsend* Court's failure to specifically define

5

"agent" is not problematic based on the facts affirmed in that case and in the plethora of other cases cited in *Townsend*, which show that there is no commercial requirement to the agency. State legislators are "authorized to act on behalf of . . . a government," § 666(d)(1), just as are a sheriff's deputy, a probation officer, a city councilman, or one of the other examples cited in this Recommendation or in *Townsend*.

### C.     *"Thing of value"*

Defendants contend that the "anything of value of $5,000 or more" clause is easily determined in cases involving traditional "business" and "transactions" of a commercial nature, but it would be "conceptually baffling" to attempt to put a value on the drafting or enacting of a statute. McGregor Brief (Doc. #207) at 9. *Townsend* instructs that a "market value approach" to bribery involving intangibles is to be used to determine whether the $5,000 threshold has been met. *Townsend,* 630 F.3d at 1011-12. "Under this approach, the value of an intangible in the black market of corruption is set at the monetary value of what a willing bribe-giver gives and what a willing bribe-taker takes in exchange for the intangible." *Id*. at 1012. The Court of Appeals explained how this approach is to be applied:

> In this case, the evidence was more than sufficient for the jury to find, as it did, that Townsend and Febles priced her intervention on behalf of him and the greater freedom he gained as a result of it at more than $5,000. The price of the earrings was $280, and there was $5,000 cash in the McDonald's bag for a total of $5,280. That is enough to meet § 666(a)(1)(B)'s jurisdiction threshold of "$5,000 or more."

*Id*. This approach puts to rest Defendants' conceptual concerns. "The value of the market value approach is that it does not require courts to struggle with putting a price on an

intangible. The parties do it themselves." *Id*. In the present case, the Government has alleged far more than the jurisdictional threshold of five-thousand dollars was offered in bribes.

### D.   *History of the enactment and sovereignty concerns*

Defendants argue that the history of the enactment requires their interpretation of the terms described above as well as evidences Congress's intent "to cover the activities of recipients of federal funds, when those activities had to do with the expenditure of funds or other use of property in a business - or transaction." McGregor Brief (Doc. #207) at 12. *Townsend* and the cases cited above reject the notion that the legislative history of the act requires reading a commercial activity into "agent," "business" or "transaction."

As to the sovereignty concerns, as the Supreme Court stated in *Sabri v. United States*, 541 U.S. 600, 605 (2004), "[s]ection 666(a)(2) addresses the problem at the sources of bribes, by rational means, to safeguard the integrity of the state, local, and tribal recipients of federal dollars." In his Brief, Gilley argues that the Indictment must name the specific federal program which provided the benefits in excess of $10,000.00,[1] and must also show a

---

[1] Gilley's argument that the Indictment's failure to include the name of the federal program which provides benefits renders it insufficient is unavailing. "[I]t is axiomatic that an indictment is sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgement under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002). The Indictment sufficiently provides him with this, especially in light of *Townsend's* instruction that no nexus is required between the funds and the bribery. *See supra*. Accordingly, this information does not bear on Gilley's trial preparation.

7

connection between the funds and the bribery. Otherwise, he asserts, the Federal Government risks extending its powers beyond its lawful bounds. Gilley Brief (Doc. #491) at 1-8. Gilley requests that this court read narrowly the Supreme Court's holding in *Salinas v. United States*, 522 U.S. 52 (1987), which states that "[t]he text of § 666(a)(1)(B) is unambiguous on the point under consideration here, and it does not require the Government to prove federal funds were involved in the bribery transaction." Gilley argues that the decision was limited to the Court's finding that there was no constitutional concern as to the facts in *Salinas*. Gilley Brief (Doc. #491) at 4. Maybe so, but the Court in *Salinas* held that there was "no serious doubt about the constitutionality of § 666(a)(1)(B) as applied to the facts of [*Salinas*], because Salinas was a county sheriff's deputy guarding prisoners at a prison that received federal monies." 522 U.S. at 52. Here, the allegations are (roughly) that Alabama state legislators sought bribes and that the state of Alabama receives federal funding in excess of $10,0000. Arguably state legislators have more control over the expenditures of funds than probation officers, sheriff's deputies, city councilmen, and the like. While Defendants focus on the transaction and argue that it was just a vote, and contained no federal funding, "[t]he statute does not require a nexus between the federal funds and the transaction at issue." *Townsend,* 630 F.3d at 1009 n3 (citing *Sabri*, 541 U.S. at 605) (rejecting the notion that "the statute must require proof of connection with federal money as an element of the offense")).

The court can find no reason to fear that, because the scheme alleged in this case

alleges the bribery of state legislators to enact legislation, the statute impermissibly encroaches on state sovereignty if the allegations in the Indictment are taken as true, the court sees no impermissible encroachment on state sovereignty.

### E. *Constitutional requirements and concerns.*

The Court of Appeals' decision in *Townsend* did not appear out of thin air. Rather, the Court pointed to the plain language of 18 U.S.C. § 666 and its own decisions in *United States v. Moore*, 525 F.3d 1033, 1048 (11th Cir.2008) ("thing of value" in statute prohibiting bribery of public officials and witnesses unambiguously includes intangibles) and *United States v. Nilsen*, 967 F.2d 539, 543 (11th Cir.1992) (holding that "the phrase 'thing of value' is a clearly defined term that includes intangible objectives") when discussing the prosecution of non-traditional "business" transactions. The Court also pointed to other circuit decisions and the Supreme Court's decision in *Salinas*, as well as its own decision in *United States v. McNair*, 605 F.3d 1152, 1186 (11th Cir. 2010) in determining that the "market approach" was valid and that the agency did not require a commercial component. Accordingly the court does not find that this prosecution violates Due Process requirements, the rule of lenity, or the doctrine of fair notice.

Further, this court does not find that 18 U.S.C. § 666 "(1) fails 'to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits' or (2) authorizes or encourages "'arbitrary and discriminatory enforcement.'" *United States v. Eckhardt*, 466 F.3d 938, 943 (11th Cir.2006) (quoting *City of Chicago v. Morales*, 527 U.S.

9

41, 56 (1999)). Thus, the court does not find § 666 unconstitutionally vague.

## II.   CONCLUSION

For the reasons stated above, the Magistrate Judge RECOMMENDS that the Motions to Dismiss (Docs. #206, 408, 437, 441, 443, 450, 456, 463, 474, 486, and 490) be DENIED.

Further, it is

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **by April 18, 2011**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see also Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 4th day of April, 2011.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE